# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MAYHLON ROBERT TROUTMAN,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 11-315Erie** |
| | ) | |
| **v.** | ) | **District Judge McLaughlin** |
| | ) | |
| **HEIL BARTLETT, et al,** | ) | **Magistrate Judge Baxter** |
| **Defendants.** | ) | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

It is respectfully recommended that Defendants' motion to dismiss [ECF No. 9] be granted in part and denied in part.  More specifically, the motion to dismiss should be denied as to the malicious prosecution claim and granted as to all other claims.

## II.    REPORT

### A.  Relevant Procedural History

Plaintiff, acting *pro se*, initiated this civil rights action in December of 2011.  As Defendants to this action, Plaintiff names Detective Bartlett and Police Officer Deluca[1] of the Police Department of the City of Bradford, Pennsylvania.  Plaintiff claims that Defendants

---

[1]  Both Defendants are named in their official and individual capacities.  The official capacity claims should be dismissed for failure to state a claim upon which relief may be granted.  See also Edelman v. Jordan, 415 U.S. 651 (1974) (the Eleventh Amendment proscribes actions in federal courts against state employees acting in their official capacity).

violated his Fourth, Fifth, Eighth, and Fourteenth Amendment rights under the federal constitution, as well as his rights under several provisions of the state constitution. Plaintiff alleges that Defendants conducted an unlawful warrantless search of his apartment which resulted in his arrest, conviction, and imprisonment. Plaintiff eventually obtained relief from the conviction by way of a PCRA petition. As to Defendants Bartlett and Deluca[2], Plaintiff raises claims under section 1983 for illegal search and seizure, false arrest/false imprisonment, malicious prosecution, selective prosecution, and official oppression[3]. As relief, Plaintiff seeks monetary and declaratory relief.

Defendants have moved to dismiss this action against them on several bases. ECF No. 9. Plaintiff has filed a brief in opposition to the pending motion to dismiss, as well as an affidavit in opposition. ECF Nos. 14, 15. Thereafter, Defendants and Plaintiff filed Reply Briefs. ECF Nos. 16, 17.[4] This dispositive motion is ripe for disposition by this Court.

## B. Standards of Review

---

[2] Plaintiff's complaint also raises other claims arising out of his arrest and conviction (Eighth Amendment claims arising out of inadequate medical care for MRSA while incarcerated, official intimidation/oppression at the preliminary hearing, interference with familial relationship, alienation of affection, and ineffective assistance of counsel. However, Plaintiff has not named any Defendants in regards to these claims and they are not properly brought against Bartlett and Deluca due to their lack of personal involvement. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs. […] Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.").

[3] Official oppression is a crime under state law and is a matter over which this federal Court lacks jurisdiction. See 18 Pa.C.S.A. § 5301.

[4] In Plaintiff's reply brief, he moves for the imposition of sanctions against defense counsel based upon her "filing of frivolous defenses" pursuant to Rule 11(b) of the Federal Rules of Civil Procedure. ECF No. 14, page 6. Although Plaintiff disagrees with Defendants' legal arguments, they are not sanctionable.

## 1) *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

## 2) Motion to dismiss pursuant to Rule 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal,

___ U.S. ___, 129 S.Ct. 1937 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S.  265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) quoting Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

Recently, the Third Circuit expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:

4

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

Although Plaintiff has attached several exhibits to his filings, the use of these exhibits by this Court does not convert Defendants' motion to dismiss for failure to state a claim into a motion for summary judgment.  Pryor v. National Collegiate Athletic Association, 288 F.3d 548, 560 (3d Cir. 2002) ("...certain matters outside the body of the complaint itself, such as exhibits attached to the complaint and facts of which the court will take judicial notice, will not trigger the conversion of an Federal Rule of Civil Procedure 12(b)(6) motion to dismiss to an  Federal Rule of Civil Procedure 56 motion for summary judgment.").

### C.  Relevant Factual History Gleaned from Plaintiff's filings

In opposition to the pending motion to dismiss, Plaintiff has provided his own affidavit, as well as some of the state court records regarding his underlying state court conviction and his subsequent PCRA relief.  It is helpful to review these documents at the outset.

In Findings of Fact by the PCRA court, the circumstances underlying Plaintiff's arrest and conviction were explained:

> This case arose out of a dispute between Andre Gobin, Troutman's landlord, and Troutman on November 25, 2006.  Bradford City Police responded to Troutman's apartment at 191 Congress Street, Bradford, PA after receiving a call alleging Troutman was threatening Gobin with a gun.

Bradford City Police Detective Heil Bartlett and Officer Mark Deluca arrived at the apartment and knocked at the door with their guns drawn. The officers ordered Troutman onto the ground and handcuffed him. They escorted him to the rear of a patrol car and placed him inside.

The officers conducted two separate searches of Troutman's apartment. The first search, conducted after Troutman was handcuffed and confined to the car and to which Troutman allegedly consented, was for the gun Troutman allegedly possessed. No gun was recovered. The second search was conducted after Gobin told police Troutman had drugs in the attic of the apartment. The second search revealed, inter alia, psilocin mushrooms, a scale, playing cards, tweezers, scissors, baggies, cocaine, marijuana and Vicodin. Troutman was arrested and charged with five counts of possession of a controlled substance; one count of possession with the intent to deliver; one count of possession of a small amount of marijuana; and one count of possession of drug paraphernalia; and one count of terroristic threats. […]

At Troutman's October 8, 2007 jury trial Detective Bartlett testified he went to Troutman's apartment to investigate a report that Troutman was threatening Gobin with a gun. He testified he and Officer Mark Deluca had their guns drawn when they knocked on Troutman's door and identified themselves because they feared for their safety. He testified they ordered Troutman onto the ground and handcuffed him. Troutman was then placed in the rear of a patrol car. Detective Bartlett testified he then advised Troutman why he and Officer Deluca acted as they did and Troutman advised him there was no gun in the residence. He testified Troutman told them they could search for a gun. The officers searched the apartment but found no weapon. They returned to Troutman in the police car and spoke with him about his minor daughter, who was inside the apartment. Detective Bartlett testified, "I was on my way to return upstairs when Mr. Gobin stopped me and said if you guys are looking for drugs there's drugs in the attic area." He testified he returned to Troutman, advised him of his <u>Miranda</u> rights, and asked Troutman whether he had drugs in his residence. He testified Troutman responded negatively. He testified he asked Troutman whether he could search for drugs in the apartment and Troutman consented. Troutman did not sign a written consent to search form. After the search, Troutman was transported to the Bradford City Police station where he was again read his <u>Miranda</u> rights and signed a waiver form. Troutman provided a handwritten statement stating that the drugs belonged to him and that he consented to the search of his home.

Officer DeLuca testified regarding the items he found during the search. Troutman did not testify on his own behalf at trial.

Troutman was found not guilty of terroristic threats and possession with intent to deliver but was convicted of the remaining counts. […] Troutman was sentenced on November 29, 2007 to an aggregate sentence of not less than one year nor

more than three years of incarceration with credit for time served of 274 days. […] No direct appeal was filed.

ECF No. 15, page 7-8.[5]

By Order dated May 12, 2008, the PCRA court granted Plaintiff's PCRA petition based upon the ineffective assistance of trial counsel for failure to move to suppress the fruits of the warrantless search. ECF No. 15, page 12. A new trial was ordered. Id.

Thereafter, a suppression hearing was held and the motion to suppress the evidence was granted. Id. at page 13 ("the Commonwealth has not convinced this Court by a preponderance of the evidence that consent to search was made by the defendant in this case."). By Order dated January 18, 2010, a *nolle prosequi* was entered and the charges were dismissed. Id. at page 14.

---

[5] The PCRA further explained:

 Troutman, through PCRA counsel, filed a timely first PCRA petition on March 7, 2008 in which he alleges trial counsel was ineffective because he failed to file a motion to suppress the fruits of an allegedly illegal warrantless search of his apartment.

I held an evidentiary hearing April 22, 2008. At the hearing, Troutman testified he did not consent to a search of his residence for drugs. He testified he signed the waiver of his Miranda rights at the police station and was told by police that if he did not sign, his girlfriend would be charged with drug-related offenses. He stated he signed the form but crossed out "free will." He testified he never signed a consent to search form. He testified two searches of his residence occurred and he did not consent to either search. He testified he discussed with trial counsel the possibility of filing a motion to suppress the evidence seized from his apartment pursuant to the allegedly illegal warrantless search. Despite his request, trial counsel did not file a motion to suppress. Troutman also testified he requested that his girlfriend be called as a witness but trial counsel did not call her.

Trial counsel testified at the hearing that no suppression motion was filed. He testified he could not recall why he did not file a suppression motion and did not recall whether he and Troutman had discussed filing a motion to suppress. He testified that, looking back at it now, he does not think a suppression motion would have succeeded. The arresting officer did not testify at the PCRA hearing.

Id.

**D. Statute of limitations**

Defendants move to dismiss this action based upon the time bar of the statute of limitations.

The federal civil rights laws do not contain a specific statute of limitations for § 1983 actions. However, it is well established that the federal courts must look to the relevant state statute of limitations for personal injury claims. Samerica Corp., Del., Inc. v. City of Philadelphia, 142 F.3d 582 (3d Cir. 1998) (internal citations omitted). Thus, based on Pennsylvania's applicable statute of limitations, generally a § 1983 claim must be filed no later than two years from the date of the alleged violation. See Urrutia v. Harrisburg County Police Dept., 91 F.3d 451 (3d Cir. (Pa.) 1996); McCreary v. Redevelopment Authority of The City of Erie, 2011 WL 1848333, at *2 (3d Cir. 2011) citing Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009).[6]

However, "the accrual date for a § 1983 claim is a question of federal law that is *not* resolved by reference to state law." Wallace v. Kato, 549 U.S. 384, 388 (2007) (emphasis in original). Accrual occurs "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." Id. (internal citations omitted). Generally, accrual is a straight-forward principle. However, "what blurs the application here of the accrual rule – that a claim accrues when the wrongful act results in damages – is the decision in Heck v. Humphrey […] that a claim for malicious prosecution accrues only where 'the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's

---

[6] In this case, Plaintiff's original complaint was received by the Clerk of Courts on December 19, 2011. Thus, barring any exception or any tolling provision, any claims raised by Plaintiff arising from events that occurred prior to December 2009, are barred by the applicable statute of limitations.

issuance of a writ of habeas corpus.'" Dique v. New Jersey State Police, 603 F.3d 181, (3d Cir. 2010) quoting Heck v. Humphrey, 512 U.S. 477 (1994).[7]  In other words, the Heck favorable termination requirement operates to defer the accrual date on any civil rights claims that necessarily implicate the invalidity of the underlying conviction.[8]  Although all of Plaintiff's claims against Defendants Bartlett and Deluca arise out of the same factual scenario, the claims have different accrual dates due to the nature of the claims themselves.

For the false arrest/false imprisonment claims[9] (based on the warrantless search in violation of the Fourth Amendment, as alleged here), as well as selective enforcement claims[10], the statute of limitations begins to run "at the time the claimant becomes detained pursuant to legal process." Wallace, 549 U.S. 384.  See also LeBlanc v. Stedman, 2012 WL 1528532, at *3

---

[7]  The Supreme Court continued "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to section 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement."  Heck, 512 U.S. at 486.

[8]  In White v. Pennsylvania State Police, Troop D Butler County, PA, 408 Fed.Appx 521, 523 (3d Cir. 2010), the Third Circuit characterized the requirement as one of cognizability:

A state prisoner's section 1983 action is barred, no matter the relief sought, if success in that action would necessarily demonstrate the invalidity of his conviction.  Wilkinson v. Dotson, 544 U.S. 74, 81-2 (2005) citing Heck, 512 U.S. at 486-87.  As a prerequisite to a civil suit, a plaintiff must prove that his conviction and sentence have been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus."  Id. at 486-87.  A claim bearing the necessary relationship to a conviction or sentence that has not been invalidated is not cognizable. See id. at 487.

[9]  "The elements of false arrest/false imprisonment are: 1) the detention of another person 2) that is unlawful."  Milbourne-Hunter v. Hittle, 2012 WL 5677470, at *4 (E.D.Pa. Nov. 15, 2012) quoting Manley v. Fitzgerald, 997 A.2d 1235, 1241 (Pa.Commw.2010).

[10]  To establish a selective enforcement claim, "a plaintiff must demonstrate: 1) that he was treated differently from other similarly situated individuals, and 2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor, … or to prevent the exercise of a fundamental right."  See Dique, 603 F.3d at 184 n5.

(3d Cir. May 2, 2012) quoting Wallace, 549 U.S. at 397; Doswell v. City of Pittsburgh, 2007 WL 2907886 (W.D. Pa. 2007) (false arrest/imprisonment); Dique, 603 F.3d at 183 ("In Gibson v. Superintendent of New Jersey Department of Law & Public Safety – Division of State Police, 411 F.3d 427 (3d Cir. 2005), we held, relying on the rule of Heck v. Humphrey [...], that the statute of limitations for a selective-enforcement claim "did not begin to run until [the] sentence was vacated." Gibson, 411 F.3d at 441.  We believe, however, that the Supreme Court's decision in Wallace [...], which clarified the Heck rule, extends to Fourteenth Amendment selective-enforcement claims and thus overrides our decision in Gibson.").   Furthermore, the illegal search claim[11] accrued at the time of the search.  Rodwell v. Weaver, 2012 WL 4955249, at * 5 (D.N.J. Oct. 10, 2012) (in an illegal search claim, "the limitations period is not tolled by the pendency of state criminal proceedings.  Any federal Section 1983 claim based on the Fourth Amendment, then, must be brought within the statute of limitations, irrespective of pending or concluded state criminal proceedings.").  Consequently, Plaintiff's claims in this regard are barred by the statute of limitations as his apartment was searched and he was arrested on November 25, 2006, well beyond the two-year statute of limitations.

For malicious prosecution[12], the statute of limitations begins to run only after the Heck v. Humphrey favorable termination requirement has been satisfied.  Heck, 512 U.S. 477.  In this case, that date is January 18, 2010 (the date the charges against Plaintiff were dismissed).

---

[11]  "A search of a home without a warrant is presumptively unreasonable under the Fourth Amendment."  Couden v. Duffy, 446 F.3d 483, 496 (3d Cir. 2006) citing Payton v. New York, 445 U.S. 573, 586 (1980).

[12]  "To prove malicious prosecution under section 1983, a plaintiff must show that: 1) the defendants initiated a criminal proceeding; 2) the criminal proceeding ended in plaintiff's favor; 3) the proceeding was initiated without probable cause; 4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and 5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."  Estate

Accordingly, Plaintiff's false arrest/imprisonment, selective enforcement, and illegal search claims are beyond the statute of limitations and the motion to dismiss should be granted as to these claims. However, Plaintiff's malicious prosecution claim is not barred by the statute of limitations and the motion to dismiss should be denied as to it.

### E. Qualified Immunity

Finally, Defendants move for summary judgment based upon the doctrine of qualified immunity.

The party asserting the defense of qualified immunity bears the burden of establishing it. See Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982). "When summary judgment is sought on a qualified immunity defense, the court inquires whether the party opposing the motion has raised any triable issue barring summary adjudication." Ortiz v. Jordan, ___ U.S. ___, ___, 131 S.Ct. 884, 889 (Jan. 24, 2011).

The doctrine of qualified immunity insulates government officials from liability for damages[13] insofar as their conduct does not violate clearly established rights. Harlow, 457 U.S. at 818. In other words, "qualified immunity shields government officials from suit even if their actions were unconstitutional as long as those officials' action 'did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Burns v. Pennsylvania Dep't of Corrections, 642 F.3d 163, 176 (3d Cir. 2011) quoting Harlow, 457 U.S.

_____

of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003) citing Donahue v. Gavin, 280 F.3d 371, 379-80 (3d Cir. 2002).

[13] The defense of qualified immunity only applies to damages and not to requests for injunctive relief. Burns v. Pennsylvania Department of Corrections, 642 F.3d 163, 176 (3d Cir. 2011) ("Although qualified immunity bars Burns from seeking monetary compensation, he may still be entitled to injunctive relief. See Harris v. Pernsely, 755 F.2d 338, 343 (3d Cir. 1985).").

at 818. "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably." Id. quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009). See also Hope v. Pelzer, 536 U.S. 730, 739 (2002) ("Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful.").

The analytical framework that district courts have traditionally employed in determining whether the defense of qualified immunity applied was set forth by the Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001). The Third Circuit summarized that framework as follows:

> The [Supreme] Court explained that a qualified immunity analysis must begin with this threshold question: do the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right? Saucier, 121 S.Ct at 2156. If the plaintiff fails to allege the violation of a constitutional right, no further inquiry is necessary. If, however, the alleged facts show that there was a constitutional violation, then the next step is to ask whether the right was clearly established. See id. In other words, a court must consider whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id.

Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002) (internal quotation marks omitted). See also Doe v. Delie, 257, F.3d 309 (3d Cir. 2001). The rigid two-step inquiry set forth in Saucier was later relaxed by the Supreme Court in Pearson v. Callahan, 555 U.S. 223 (2009). See also Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010). As the Pearson Court explained: "[b]ecause the two-step Saucier procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case." 555 U.S. at ___, 129 S.Ct. at 821. See also DeLauri v. New Jersey Div. of State Police, 2009 WL 222983, at *5 (D.N.J. 2009) ("[C]ourts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in

light of the circumstances in the particular case at hand."). Accordingly, in the spirit of <u>Pearson</u> and its progeny, this Court will proceed straight to the second prong of the <u>Saucier</u> analysis – whether the right was "clearly established."

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier</u>, 533 U.S. at 202. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." <u>Curley</u>, 298 F.3d at 277, <u>quoting</u> <u>Saucier</u>, 533 U.S. at 201.

At the heart of this case is the warrantless search and subsequent malicious prosecution. Here, the proper inquiry on the qualified immunity analysis[14] is whether a police officer in November of 2006 would have had "fair warning" that conducting a warrantless search of a suspect's home violated his constitutional rights?

In order for an official "to have 'fair warning' […] that his or her actions violate a person's rights, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Burns</u>, at *9, <u>quoting</u> <u>United States</u>

---

[14] Defendants characterize this Court's inquiry as:

> In the instant matter, Plaintiff alleges that Defendants … intentionally and falsely searched his apartment, which revealed drugs and drug paraphernalia. The need for Police Officers to exercise discretion and carry out their duties with official authority is necessarily a key to their ability to guard and keep safe the County of Bradford and its citizens. Their ability to carry out their duties and exercise discretion cannot be hindered by the threat of civil liability for an alleged false search. Under the <u>Harlow</u> standard, they must be afforded the protection of qualified immunity …

ECF No. 10, page 9. Defendants' position is an oversimplification of the issue at hand (and is unsupported by legal citation to precedent).

v. Lanier, 520 U.S. 259, 270 (1997) and Anderson v. Creighton, 483 U.S. 635, 640 (1987).[15]  For

a right to be clearly established, the Third Circuit has instructed that "'there must be sufficient

precedent at the time of the action factually similar to the plaintiff's allegations, to put [the]

defendant on notice that his or her conduct is constitutionally prohibited.'"  McKee v. Hart, 436

F.3d 165, 171 (3d Cir. 2006) quoting McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001).

　　　Warrantless searches of homes have been prohibited since the adoption of the Bill of

Rights in 1791.   In the spring and early summer of 2006 over the short period of four months,

the Supreme Court issued four decisions which reiterated and stressed the longstanding

proscription against warrantless searches of homes.  In Brigham City, Utah v. Stuart, the

Supreme Court lectured:

> It is a " 'basic principle of Fourth Amendment law that searches and seizures
> inside a home without a warrant are presumptively unreasonable.' "  Groh v.
> Ramirez, 540 U.S. 551, 559 (2004) quoting Payton v. New York, 445 U.S. 573,
> 586 (1980) (some internal quotation marks omitted). Nevertheless, because the
> ultimate touchstone of the Fourth Amendment is "reasonableness," the warrant
> requirement is subject to certain exceptions.  Flippo v. West Virginia, 528 U.S.
> 11, 13 (1999) (per curiam); Katz v. United States, 389 U.S. 347, 357 (1967).  We
> have held, for example, that law enforcement officers may make a warrantless
> entry onto private property to fight a fire and investigate its cause, Michigan v.
> Tyler, 436 U.S. 499, 509 (1978), to prevent the imminent destruction of evidence,
> Ker v. California, 374 U.S. 23, 40 (1963) (plurality opinion), or to engage in "
> 'hot pursuit' " of a fleeing suspect, United States v. Santana, 427 U.S. 38, 42
> (1976).   "[W]arrants are generally required to search a person's home or his
> person unless 'the exigencies of the situation' make the needs of law enforcement
> so compelling that the warrantless search is objectively reasonable under the
> Fourth Amendment."  Mincey v. Arizona, 437 U.S. 385, 393-94 (1978).").

547 U.S. 398, 403 (May 22, 2006).  See also Georgia v. Randolph, 547 U.S. 103 (March 22,

2006) (holding that a warrantless search was unreasonable as to a criminal defendant who was

physically present and expressly refused to consent, but whose roommate was present and did

---

[15] The protection of qualified immunity applies regardless of whether the government official's
error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and
fact."  Groh v. Ramirez, 540 U.S. 551, 557 (2004).

consent); <u>Hudson v. Michigan</u>, 547 U.S. 586 (June 15, 2006) ("Until a valid warrant has issued, citizens are entitled to shield 'their persons, houses, papers, and effects,' U.S. Const., Amdt. 4, from the government's scrutiny. Exclusion of the evidence obtained by a warrantless search vindicates that entitlement."); <u>Samson v. California</u>, 547 U.S. 843, 859 (June 19, 2006) ("The suspicionless search is the very evil the Fourth Amendment was intended to stamp out. <u>See Boyd v. United States</u>, 116 U.S. 616, 625-30 (1886)."). None of these decisions were a departure from the spirit of the Supreme Court's previous rulings on warrantless searches of homes.

These four decisions, the last two of which were five months before the warrantless search conducted of Plaintiff's apartment, are enough to provide notice to these Defendants that their conduct was constitutionally prohibited. <u>See</u> <u>also</u> Estate of Smith, 318 F.3d 497 (2003) (explaining elements of malicious prosecution under § 1983). Accordingly, Defendants are not entitled to qualified immunity.

**III.   CONCLUSION**

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss [ECF No. 9] be granted in part and denied in part. More specifically, the motion to dismiss should be denied as to the malicious prosecution claim and granted as to all other claims.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond

thereto.  See Fed.R.Civ.P. 72(b)(2).  Failure to file timely objections may constitute a waiver of appellate rights.  See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).


                                        /s/ Susan Paradise Baxter
                                        SUSAN PARADISE BAXTER
                                        United States Magistrate Judge


Dated:  December 4, 2012